U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed May 25, 2007                          **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BRETT EVAN MARBLE AND | § | CASE NO. 07-50099-RLJ-11 |
| GAYLA DIANE MARBLE, | § | |
| | § | |
| DEBTORS | § | |

## MEMORANDUM OPINION AND ORDER

The Court considers whether to approve the employment of David Langston and his firm Mullin Hoard & Brown, L.L.P. as counsel for the chapter 11 debtors, Brett and Gayla Marble. The United States Trustee ("UST") objects to the employment, suggesting that Langston and Mullin Hoard & Brown do not satisfy section 327(a) of the Bankruptcy Code, which requires that counsel for the debtor-in-possession not hold or represent an interest adverse to the estate and be disinterested. Hearing on the matter was held May 22, 2007.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion and Order contains

the Court's findings of fact and conclusions of law.  Bankruptcy Rule 7052.

## Background

The issue of whether Langston[1] is disqualified from serving as debtors' counsel arises

from Langston serving as trustee of a spendthrift trust (as it is so labeled) of which Brett Marble is

the beneficiary and two specific transactions that resulted in Brett Marble recovering $22,500

($15,000 from one and $7,500 from the other) that was, in turn, paid to Langston as a retainer for

his representation of the Marbles in this chapter 11 case.  This case was filed on April 2, 2007.

According to the Marbles, the filing of this chapter 11 case was a culmination of settlement

negotiations with Hale County State Bank and was necessary to effect the workout arrangement

that had been reached between the Marbles and Hale County State Bank.  Langston filed a

motion to approve employment on April 13, 2007.[2]  The motion and Langston's affidavit

accompanying the motion disclose the following:

> David R. Langston, a partner in the law firm of MULLIN HOARD & BROWN has
> represented <u>Marble Brothers Partnership, Marble Brothers, Inc.</u> as well as their
> individual partners and stockholders, <u>Don Marble, Fred Marble and Keith Marble</u> for
> a period of more than twenty years. Mr. Langston was the attorney for these entities
> and individuals when they filed Chapter 11 petitions and achieved confirmation of
> Chapter 11 plans of reorganization in the early 1980s. Since that time, Mr. Langston
> has continued to represent the individuals and their business entities in a variety of
> business transactions. He also serves as the <u>Trustee of the Marble Children's Trusts
> and the Marble Children's Trusts Partnership.</u> Brett Marble is the son of Don and
> Nancy Marble and a beneficiary of the Brett E. Marble Farm Trust. The Marble
> Children's Trusts Partnership recently purchased the water rights to two water wells
> from Brett Marble, and his sister, Donette Marble, located on 160 acres of farmland
> that they own in undivided one-half (½) interests. These water rights were purchased

---

[1]The Court will simply refer to Langston but, in so doing, will be referring to both Langston as lead counsel on the case and the firm of Mullin Hoard & Brown, L.L.P.

[2]The Court actually entered an order approving the employment on April 16, 2007.  The UST's objection was filed on April 17, 2007.  The Court considers the propriety of the employment anew in light of the UST's objection.

for the total consideration of $15,000 and were associated with two water wells that the Marble Children's Trusts Partnership has been using in connection with a center pivot irrigation system connected with land adjacent to the property owned by Brett and Donette Marble. The $15,000 paid by the Marble Children's Trust for the right to use the two water wells was then paid to the law firm of MULLIN HOARD & BROWN, L.L.P. as a retainer for the filing of the Chapter 11 petition of Brett and Gayla in this bankruptcy case. Furthermore, a similar transaction was entered into between Don and Nancy Marble and B&D Tierra, Inc. B&D Tierra, Inc. is a Texas corporation whose stock is owned fifty percent (50%) by Donette Marble and fifty percent (50%) by Brett Marble. Don and Nancy Marble purchased the water rights connected with the use of a water well located on 118 acres of farmland owned by <u>B&D Tierra, Inc.</u> This well has provided water to the residence of Don and Nancy Marble for many years since the well is located adjacent to the 118-acre tract of farmland. As consideration for the purchase of water rights and an associated easement for a pipeline to transport the water to their residence, Don and Nancy Marble paid $7,500 to B&D Tierra, Inc. for the conveyance. The $7,500 was then paid to MULLIN HOARD & BROWN, L.L.P. as a retainer for the filing of the Chapter 11 bankruptcy petition by Brett and Gayla Marble.

The foregoing facts were elaborated on and, to some extent, clarified at the hearing on the motion. Langston is the trustee on seven trusts, presumably all identical, that were established by Don and Nancy Marble, parents of Brett Marble, for the benefit of their children. The seven trusts are partners of a farming partnership named the Marble Children's Trusts Partnership. The partnership is not an insignificant enterprise. It holds assets valued in excess of $825,000, consisting of farmland, crops, equipment, stock, and cash. It also generated in excess of $250,000 in income in 2006. Brett Marble is the beneficiary of the Brett E. Marble Farm Trust (the "Brett Marble Trust"), which is one of the seven trusts created by his parents. Langston has served as trustee of the trusts since he was approved as the successor trustee for the trusts on February 1, 1989.

As outlined in the motion and affidavit, the Marble Children's Trusts Partnership paid $15,000 for water rights from two wells located on a 160-acre tract of land owned by Brett Marble

and his sister, Donette Marble, each owning an undivided one-half interest. The $15,000 purchase price was based on the B&D Tierra, Inc. transaction referred to in Langston's affidavit in which Don and Nancy Marble paid $7,500 for water rights from *one* well located on a 118-acre tract owned by B&D Tierra, Inc. As disclosed, B&D Tierra, Inc. is owned fifty-fifty by Brett Marble and his sister, Donette Marble. As the two transactions involve affiliated parties and given Langston's role, the UST questions whether there is any assurance that fair value was received on each deal, especially on the purchase by the Marble Children's Trusts Partnership. Some comfort is provided on the B&D Tierra, Inc. transaction as the property there was fully encumbered and the lienholder apparently approved the transaction.[3] The Marbles and Langston submit that fair value was paid on the partnership purchase (which netted $15,000) as it was based on the B&D Tierra, Inc. deal. (Since two wells were involved, the consideration was doubled what it was for the sale of the water rights from the one well involved in the B&D Tierra, Inc. transaction.) The Marbles and Langston also point out that Brett and Gayla Marble have claimed Brett Marble's interest in the 160-acre tract on which the two wells are located as part of their homestead exemption thereby negating any potential adverse impact on their creditors, even if the consideration was deemed inadequate.

### Discussion

Section 327(a) of the Bankruptcy Code provides that the debtor-in-possession may employ counsel that is disinterested and does not hold or represent an interest adverse to the bankruptcy estate. Disinterestedness is defined at 11 U.S.C. § 101(14) as a person that

---

[3]In fact, the UST states that at present it does not appear that the B&D Tierra, Inc. transaction compromises Langston's disinterestedness.

(A) is not a creditor, an equity security holder, or an insider; . . . . and

© does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason;

Courts have interpreted the meaning of disinterested as a "'professional [who] can make unbiased decisions, free from personal interest, in any matter pertaining to the debtor's estate….The purpose of the rule that [the professional] be disinterested is to assure undivided loyalty to the debtor.'" *In re Kings River Resorts, Inc.*, 342 B.R. 76, 87 (Bankr. E.D. Cal. 2006) (quoting *First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp.* (*In re CIC Inv. Corp.*), 192 B.R. 549, 553-554 (9th Cir. BAP 1996)). "A disinterested person, therefore, 'should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.'" *In re C & C Demo, Inc.*, 273 B.R. 502, 506 (Bankr. E.D. Tex. 2001) (quoting *In re Martin*, 817 F.2d 175, 181 (1st Cir. 1987)). The Fifth Circuit stated that section 101(14) prevents employment of any professional "who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 (5th Cir. 1986).

While the term "adverse interest" is not defined in the Code, courts have defined it as "possess[ing] … an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant." *In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 461 (Bankr. N.D. Ohio 2003). "'[I]nterests are not considered "adverse" merely because it is possible to conceive a set of circumstances under which they might clash.'" *Id.* (quoting *In re Caldor, Inc.*, 193 B.R. 165, 172 (Bankr. S.D.N.Y. 1996)).

The Court, accepting the UST's conclusion that the B&D Tierra, Inc. transaction does not at present compromise Langston's disinterestedness,[4] turns first to the sale of the water rights by Brett Marble and Donette Marble to the Marble Children's Trusts Partnership. The potential problem, according to the UST, is that there is no assurance that such sale was for fair value given that the parties to the sale are affiliated. The UST makes the point that the transaction should be investigated and further points out that the transaction likely made Donette Marble a creditor of the bankruptcy estate.

The Court appreciates the concerns of the UST and agrees that the transaction merits review. However, as of the time of the filing of this bankruptcy case, as well as at the time of the hearing on the motion, the Court does not believe that the transaction causes Langston not to be disinterested or to have or represent an adverse interest to the estate. The Court recognizes that debtors frequently dispose of assets pre-petition as a means to raise funds for attorney's fees. Any creditor or party in interest can examine and, if necessary, question the transaction. The Marbles have asserted a homestead claim to Brett Marble's interest in the 160-acres which, if ultimately allowed, makes the transaction arguably irrelevant.[5] The consideration per well is the same as on the B&D Tierra, Inc. sale. The 160 acres is presently in the Conservation Reserve Program, which takes the land out of cultivation in return for the government paying the landowners for not farming the land and maintaining it as grassland. Because of this, according

---

[4]*See supra*, note 3.

[5]The Court understands and recognizes that, if this case goes to confirmation and the confirmation standards under section 1129(b) of the Bankruptcy Code are implicated, a scenario might arise in which the Marbles will have to dedicate the value of their interests in exempt property to satisfy the absolute priority rule under section 1129(b) of the Bankruptcy Code.

to Brett Marble, the land is not in need of water from the two wells. Finally, the deed by which the water rights were transferred states that Brett and Donette Marble conveyed "[a]n undivided one-half (½) fee simple determinable interest" in the water rights they own on the land. It appears they have retained a one-half undivided interest in the water rights pertaining to the two wells thereby preserving the use of water from the wells, if necessary. While the Court is not making a dispositive ruling on such mitigating facts, the Court is satisfied that a disqualifying circumstance arising as a result of the transaction is so remote as to render it a non-issue.

The Court next examines the question of whether Langston serving as trustee of the Brett Marble Trust disqualifies him and his firm. Similar to the above analysis concerning the purchased water rights by the partnership, a review of this situation cannot conclusively establish that a problem (a conflict or other disqualifying event) will *not* arise. And the Court does not believe a problem presently exists. The Court considers Langston's duties both as attorney for the debtor-in-possession and as trustee and the nature of a spendthrift trust. The fiduciary duties of counsel for the debtor-in-possession arise from "either the role of counsel . . . as an officer of the court or the derivative nature of the fiduciary obligations owed by counsel to its client, the debtor-in-possession." *See ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.*, 278 B.R. 117, 124 (S.D. Tex. 2002), *aff'd*, 324 F.3d 768 (5th Cir. 2003).[6] The Restatement (Third) of Trusts states "a

---

[6]The court noted that the fiduciary duties placed upon counsel to the debtor-in-possession regarding the bankruptcy estate include:

1) A duty to "carefully monitor each case and encourage conversion or dismissal without delay when it becomes apparent that reorganization is no longer feasible or that wrongdoing is taking place,"

2) A duty to inform the bankruptcy court of a debtor-in-possession's violation of its fiduciary duties to the estate and its creditors,

3) A duty to disclose the debtor's diversion of debtor-in-possession funds,

4) A duty to maximize the estate, and

trustee has a duty to administer the trust solely in the interest of the beneficiaries."

RESTATEMENT (THIRD) OF TRUSTS § 78 (2007). The Supreme Court defined the duty of loyalty as one to guarantee the interests of the beneficiaries. *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000). Texas law also requires that the trustee preserve or protect the trust's assets for the beneficiaries' benefit. *Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372, 379 (Tex. App.– San Antonio 1992, pet. denied), *cert. denied*, 508 U.S. 965 (1993).

The Fifth Circuit has held that spendthrift trusts are not property of the estate. *Bass v. Denney* (*In re Bass*), 171 F.3d 1016, 1029 (5th Cir. 1999). The court followed "the longstanding rule of Texas law that a settlor should be allowed to create a spendthrift trust that shields trust assets from the beneficiary's creditors." *Id.* The court explained that "bankruptcy does not free federal courts to ignore the clear public policy of a state that makes sacrosanct the intentions of the settlor of a spendthrift trust." *Id.* "[F]ederal courts are shackled by the same constraints as are the courts of Texas: They can neither prohibit nor command the exercise of such discretion, or otherwise interfere-directly or indirectly-with the unfettered discretion of such trustees." *Id.* at 1030. However, if the trust loses its spendthrift protection then the trust can become property of the estate. *See Matter of Shurley*, 115 F.3d 333, 336 (5th Cir. 1997). Furthermore, self-settled portions of a spendthrift trust do not get the same protections from creditors and are considered

---

5)     A duty to exercise independent professional judgment on behalf of the estate and to disclose any actual or potential conflicts of interest with the estate.

*See ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.*, 278 B.R. 117, 124 (S.D. Tex. 2002), *aff'd*, 324 F.3d 768 (5th Cir. 2003). Some courts have concluded that a fiduciary duty extending from the debtor-in-possession's counsel to the estate does not exist as the Code does not impose such a duty. *Id.* While the Code does impose a duty to act in the best interests of the estate on the debtor-in-possession, it does not extend the duty to its counsel. *Id.*

property of the estate. *Id.* at 338. Therefore, only property settled by someone other then the beneficiary gets the protections of a spendthrift trust and is excluded from the property of the estate. *Id*.

As trustee of a so-labeled spendthrift trust, there is clearly no incentive for Langston to scrutinize the trust to determine if its assets should be made available to creditors. The Court believes this situation would not be different were Langston not the trustee. If the Brett Marble Trust is indeed a valid spendthrift trust, neither the Marbles nor Langston as trustee has an obligation to make the trust assets available to the bankruptcy estate. The validity of the spendthrift feature has not been questioned. An initial assessment must be made by counsel of whether the trust is a valid spendthrift trust, but the Court sees this as no different than bankruptcy counsel's evaluation concerning the validity of exemption claims. In the vast majority of cases, this determination is straightforward and simple: the property is either exempt or not (the trust is either a spendthrift trust or not). If gray areas emerge, i.e., there is a bonafide legal question of whether property is exempt or not (or whether a trust is a spendthrift), the duty of counsel is to the debtor personally rather than as debtor-in-possession. The Court would expect debtor's counsel to defend his client's claim of exemptions; the Court would likewise expect debtor's counsel, in this instance Langston, to defend his client's claim as beneficiary of a valid spendthrift trust. In short, the interests of Brett Marble and Langston are, in the Court's view, aligned.

## Conclusion

The Court appreciates the candor of Langston in disclosing the various transactions and circumstances that may give rise to a disqualifying event, as well as the UST monitoring the

relationship between debtors' counsel, his clients, and the creditors. The Court is further aware that Langston is an experienced and accomplished attorney in the bankruptcy arena and will, if history is a predictor, lead this chapter 11 proceeding to a successful conclusion. The Court will, therefore, approve the employment of Langston and his firm Mullin Hoard & Brown, but does so without prejudice to any creditor or party in interest raising an issue concerning the propriety of the continued representation in light of facts and circumstances as they may develop throughout this case.

Upon the foregoing, it is

ORDERED that the employment of David R. Langston (as lead counsel) and the firm of Mullin Hoard & Brown, L.L.P., as attorneys to represent the debtor-in-possession is approved and is deemed effective as of April 2, 2007.

### End of Memorandum Opinion and Order ###