

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



**Signed May 9, 2008**                                            **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BRETT EVAN MARBLE AND | § | CASE NO. 07-50099-RLJ-7 |
| GAYLA DIANE MARBLE, | § | |
| | § | |
| DEBTORS | § | |

### MEMORANDUM OPINION

**Preliminary Statement**

The Court considers the motion of Hale County State Bank (the "Bank") requesting that the Court issue an order compelling the debtor Brett Evan Marble ("Marble") to answer four questions asked at a Rule 2004 examination of Marble held on January 3, 2008. Marble asserted his Fifth Amendment privilege to each of the four questions.[1]

The questions asked and Marble's response to each question are as follows:

---

[1] The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

Question 1 from pages 103-104:

Q: So you don't recall telling Brian that you had represented some things to him incorrectly?

A: No, sir.

Q: Is it your testimony that you have not made any incorrect representations to the bank?

A: No, sir.

Q: So I didn't phrase that question well at all. Have you or have you not made incorrect representations to the bank?

Mr. Langston: Let me have a moment with him.

Mr. Melton: I am going to have to object to that, but I understand.

Mr. Langston: Well I need to advise him whether or not he needs to exercise his privileges. Do you thing that's objectionable as to whether somebody –

Mr. Melton: Under that question, I would like to keep my objection on the record, yes.

Off the record.

A: Based on advise from counsel, I am going to take the Fifth, my Fifth Amendment right and decline to answer.

Question 2 from Page 105:

Q: With regard to the financial statement dated January 17, 2007 –

Mr. Langston: January 17?

Mr. Melton: 17th, the last one.

|  |  |
|---|---|
|  | Q: (By Mr. Melton) – Do you have any idea where those cattle numbers came from? |
|  | A: I'll take the Fifth. |
| Question 3 from Page 107: | Q: When did you first start incurring credit card debt on behalf of B&D Tierra, Inc.? |
|  | A: Oh, approximately four years ago. |
|  | Q: Did it show up on any of the financial statements you have submitted? |
|  | A: I am not certain of that. |
|  | Q: Take a look at the January 17th, 2007 financial statement. Does it show up anywhere on that? |
|  | A: That's probably that one that we had it in there, that John Deere equipment principal and interest, 13,381 farm plan. I believe only the farm plan was the only one to show up there. |
|  | Q: Why isn't the rest of it on there? |
|  | A: Take the Fifth. |
| Question 4 from Page 108: | Q: (by Mr. Melton): Exhibit 27, I will ask you to take a look at that one. Does any credit card debt show up on that one? |
|  | A: Once again, only the farm plan, John Deere Credit. |
|  | Q: Can you tell my why the credit card debt is not on there? |
|  | A: Take the Fifth. |

The issue before the Court is whether Marble waived his Fifth Amendment privilege by responding to questions in a Rule 2004 examination about his cattle operations and accounting as well as by admitting to making a mistake on a financial statement used to procure a loan and, if not waived, whether he properly invoked his Fifth Amendment right to silence when he refused to answer four specific questions posed to him by counsel for the Bank about misrepresentations he may have made to the Bank.

The Court concludes that Marble did not waive his Fifth Amendment right against self-incrimination by answering general questions posed to him by the Bank during the Rule 2004 examination regarding his cattle operations and methods of accounting. Furthermore, Marble properly invoked his Fifth Amendment privilege by refusing to answer four specific questions by the Bank that related to whether or not he made oral or written misrepresentations to the Bank in connection with a loan.

**Discussion**

*1. The Fifth Amendment Privilege Generally and in Bankruptcy Proceedings*

The Fifth Amendment to the United States Constitution provides in part that no person "shall be compelled in any criminal case to be a witness against himself …." U.S. CONST. amend. V. Although the language of the amendment speaks only to a privilege against self-incrimination in a criminal case, the Supreme Court has held that "[t]he privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). In that regard,

> [t]he Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). Thus, the privilege should apply in a Rule 2004 examination in a civil bankruptcy case if the debtor's answers could inculpate him in future criminal proceedings. *See id.*

In *In re Huron*, Judge Felsenthal explained with particularity why the privilege applies in bankruptcy proceedings. 92 B.R. 670, 673 (Bankr. N.D. Tex. 1988). The former Bankruptcy Act granted a debtor broad immunity by providing that "[no] testimony given by [a debtor] shall be offered in evidence against [a debtor] in any criminal proceeding." *Id.* (quoting *Glickstein v. United States*, 222 U.S. 139, 140-141, 32 S.Ct. 71, 72, 56 L.Ed. 128 (1911)). Judge Felsenthal explained that since the current Bankruptcy Code eliminated that immunity and, therefore, the debtor's testimony in a bankruptcy proceeding can be used against him, "a debtor may invoke the fifth amendment … in a bankruptcy proceeding unless granted immunity." *Id.* (citing 11 U.S.C. § 344).

Since, here, Marble has not been granted immunity, he has a right against self-incrimination under the Fifth Amendment so long as he did not waive the privilege and it is determined that he properly invoked his right to silence.

2. *Waiver of the Privilege*

As a preliminary matter, it is a fundamental principle of Fifth Amendment jurisprudence that a waiver of a person's privilege against self-incrimination will not be lightly inferred. *Klein v. Harris*, 667 F.2d 274, 287 (2nd Cir. 1981) (citing *Smith v. United States*, 337 U.S. 137, 150, 69

S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949)). "Courts indulge every reasonable presumption against finding a testimonial waiver." *Id*. (citing *Emspak v. United States*, 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955), and *United States v. O'Henry's Filmworks, Inc.*, 598 F.2d 313, 318-19 (2d Cir.1979)). Indeed, only under the most compelling circumstances should a waiver of the Fifth Amendment's privilege against self-incrimination be inferred. *Id*. at 288. "Such circumstances do not exist unless a failure to find a waiver would prejudice a party to the litigation." *Id*. (citation omitted).

Notwithstanding the foregoing, a person can waive his or her right to silence by testifying to incriminating facts. *Rogers v. U.S.*, 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). Once waiver is made by disclosure of an inculpating fact, the privilege is also waived as to the details of that fact unless such disclosure would further incriminate the person. *Id*. Thus, when a person has testified to a criminating fact but claims privilege as to the details, "the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination." *Id*. at 375 (citing *Heike v. United States*, 227 U.S. 131, 144, 33 S.Ct. 226, 228, 57 L.Ed. 450 (1913); *Brown v. Walker*, 161 U.S. 591, 600, 16 S.Ct. 644, 648, 40 L.Ed. 819 (1896)).

In *Klein*, the Second Circuit Court of Appeals adopted a two-part test for determining whether a waiver should be inferred from prior testimonial statements. 667 F.2d at 287. That test holds that waiver should only be inferred if (1) the prior statements create a significant likelihood that the fact finder will be left with and prone to rely on a distorted view of the truth, and (2) the person had reason to know that her prior statements would be interpreted as a waiver of the privilege. *Id*. Two cases out of the Northern District of Texas, *In re Hulon*, 92 B.R. at 673 (Hon.

Steven A. Felsenthal), and *In re Mudd*, 95 B.R. 426, 429-30 (Bankr. N.D. Tex. 1989) (Hon. Harold C. Abramson), have followed this two-part test.

Under the facts of the present case, the argument that Marble waived his Fifth Amendment privilege fails on the first prong of the *Klein* test as to each of the items in dispute. It is clear from a review of the Rule 2004 examination transcript that Marble did not disclose any facts that could be considered criminating prior to invoking his right to silence. Furthermore, the testimony given by Marble prior to invoking the privilege does not leave the fact finder with a distorted view of the truth. The questions to which Marble pled the Fifth are as follows:

> Q. "Have you or have you not made incorrect representations to the bank"?
>
> Q. "With regard to the financial statement dated January 17, 2007 . . . do you have any idea where those cattle numbers came from"?
>
> Q. "Why isn't the rest of it [the credit card debt incurred on behalf of B&D Tierra] on there [the January 17, 2007, financial statement]"?
>
> Q. "Can you tell me why the credit card debt [incurred on behalf of B&D Tierra] is not on there [the December 28, 2005, financial statement]"?

The first question, a follow-up question intended to clarify an admittedly muddled question on the part of the Bank, was part of a fresh line of questioning which sought to determine whether Marble made oral misrepresentations to a bank representative during a telephone conversation. After consulting with his attorney, Marble claimed the privilege. Nothing in the exchange prior to that question leaves the Court with a distorted view of the truth regarding those alleged oral misrepresentations. Marble merely stated that he remembered the conversation with the bank representative but could not remember what he told him specifically. Each of the last three questions was part of a discussion regarding financial statements that

Marble had presented to the Bank in connection with lending transactions. It is the bank's position that the financial statements misrepresented B&D Tierra's financial position and the Bank sought to prove-up that position through these questions. The Bank argues that by testifying to accounting procedures and methods used in his cattle operations and preparation of his financial statements early on in the examination Marble waived his right to silence and should be compelled to answer any question regarding alleged misrepresentations made on the financial statements.

Again, nothing in the examination prior to the questioning regarding the financial statements presents the Court with a distorted view of the truth. Marble's prior testimony centered on procedures associated with running his cattle ranch, accounting for death losses, and things of that nature. The Bank's questioning, no doubt, was laying the foundation for its later questions with respect to the alleged misrepresentations on the financial statements, but when the Bank finally reached the point in its questioning where it specifically asked Marble about the misrepresentations, he invoked his right to silence.

In *In re Mudd*, a case relied on by both the Bank and by Marble, the court held that a debtor who, from the first § 341 meeting of creditors, invoked the Fifth Amendment privilege and then expressly waived the privilege through both criminal and bankruptcy counsel at a Rule 2004 examination and testified to criminating facts before attempting to invoke a blanket privilege again at a subsequent Rule 2004 examination had waived his right to silence. 95 B.R. at 430-431. As to the first prong of the *Klein* test, the court reasoned that allowing the debtor to assert a blanket Fifth Amendment privilege after vacillating between remaining silent and testifying to criminating facts would allow the debtor to close the door on a subject he freely opened. *Id.* at

430. The court noted that "[t]he law does not permit a witness to open the door just wide enough to offer the Court an impaired view of the facts. Once the witness voluntarily opens the door, the Court may open it completely, and scrutinize every exposed matter." *Id*. In that case, the debtor knew going into the § 341 meeting of creditors and the Rule 2004 examinations that his testimony could have criminal ramifications as evidenced by the presence of criminal counsel, yet, after expressly invoking a blanket privilege, he subsequently waived that privilege, expressly and impliedly, and testified to criminating facts. *See generally id*. That certainly was not the case here.

Even assuming *arguendo* that the first prong of the *Klein* test is satisfied as to each item, there is, however, no evidence that Marble had reason to know that his testimony at the beginning of the Rule 2004 examination would be interpreted as a waiver of the privilege as to questions posed to him at the end of the same examination, and, thus, the Bank's argument fails on the second prong of the test.

In *In re Mudd*, the court relied heavily on the presence of criminal counsel for the debtor at the Rule 2004 examination and counsel's express waiver of the debtor's right to silence in holding that the debtor had every reason to know that his lawyer's statement would be interpreted as a waiver of his Fifth Amendment rights. 95 B.R. at 430. There is no such evidence here that Marble had reason to know his prior testimony would be interpreted as a waiver of his Fifth Amendment privilege.

Indulging every reasonable presumption against waiver, it must be determined that Marble did not waive his Fifth Amendment privilege.

*3. Proper Invocation of the Privilege*

Having determined that the privilege was not waived, it must now be determined whether Marble properly invoked his Fifth Amendment privilege.

In *Hoffman v. United States*, the Supreme Court offered a succinct summary of the law respecting proper invocation of this Constitutional privilege. 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed.2d 1118 (1951). After speaking of the protection offered by the Fifth Amendment, the Court stated:

> But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified and to require him to answer if 'it clearly appears to the court that he is mistaken.' However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'

*Id.* (internal citations omitted).

Under the facts of the present case, it is clear that Marble had reasonable cause to apprehend danger from a direct answer to the Bank's questions regarding the alleged misrepresentations made by Marble either orally or in the financial statements. As noted in Marble's Response to the Bank's Motion to Compel:

> Section 1014 of Title 18 of the United States Code makes it a crime for a person to "knowingly make[] any false statement or report, or willfully overvalue[] any land, property, or security, for the purpose of influencing in any way the action of the . . . Federal Deposit Insurance Corporation . . ." punishable by a fine of not more than $1,000,000 or imprisonment not more than thirty (30) years or both. 18 U.S.C. § 1014. Additionally, Section 152 and 157 of Title 18 of the United States Code create

    criminal penalties for actions of persons involved in bankruptcies under title 11. Section 152 makes it a crime for a person to conceal assets and to make false oaths and claims. 18 U.S.C. § 152. Section 157 makes it a crime for any person "who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so . . . makes a false or fraudulent representation, claim or promise concerning or in relation to a proceeding under title 11 . . . at any time before or after the filing of the petition . . ." punishable by fine or imprisonment not more than five (5) years or both. 18 U.S.C. § 157.

Debtor's Response to Bank's Mot. to Compel 3 n.1.

    In light of the criminal repercussions involved with making misrepresentations to a bank that could influence the action of the Federal Deposit Insurance Corporation and in light of the criminal consequences associated with making false oaths or representations in a proceeding under title 11, Marble was well advised to invoke his Fifth Amendment privilege and properly did so. This conclusion is buttressed by the fact that the Rule 2004 examination resulted in an investigation of the circumstances of the case by the Federal Bureau of Investigation.

### Conclusion

    Since Marble has not been offered immunity and, therefore, has a Constitutional right to silence and since that right was not waived but, in fact, was properly invoked in response to questions that posed a real danger of potential criminal prosecution, the Bank's Motion to Compel should be denied.

### End of Memorandum Opinion ###